UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FLAVIA BENITEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | No. 04-11959-NG |
| SODEXHO MARRIOTT SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

March 14, 2007

DEIN, U.S.M.J.

## I. INTRODUCTION

Plaintiff Flavia Benitez ("Ms. Benitez") has brought this action pro se against her former employer, Sodexho, Inc. ("Sodexho"),[1] claiming that she was wrongfully terminated from her employment on the basis of a disability in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. ("ADA"). It is undisputed for summary judgment purposes that Ms. Benitez was fired after failing to come to work because she was in the hospital for minor surgery. Presently before the court is the "Defendant's Motion for Summary Judgment" (Docket No. 59) by which Sodexho is seeking summary judgment on the grounds that Ms. Benitez cannot establish that she was "disabled" within the meaning of the ADA. As described in detail below, this court finds that there is

---

[1] Sodexho states that it was misnamed Sodexho Marriott Services in this action and that its proper name is Sodexho, Inc.

insufficient evidence in the record to support a finding that, during the relevant time period, Ms. Benitez suffered from an impairment that substantially limited one or more of her major life activities and was therefore disabled under the ADA. Furthermore, to the extent Ms. Benitez is claiming that Sodexho regarded her as disabled within the meaning of the ADA, this court finds that the record is insufficient to support such a claim. Accordingly, and for all of the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Sodexho's motion be ALLOWED.

## II.  STATEMENT OF FACTS[2]

The undisputed facts, viewed in the light most favorable to Ms. Benitez, are as follows.

### History of Ms. Benitez's Employment with Sodexho

The plaintiff, Ms. Benitez, was employed by defendant Sodexho from August 18, 1997 until her termination in January 2000.  (DF ¶ 3; Pl.'s Ex. A at 2; Def.'s Ex. C). Throughout her employment, Ms. Benitez worked as a cashier at a café operated by the defendant in Boston, Massachusetts.  (DF ¶ 3).  Her job responsibilities included operating the cash register, cleaning register areas and beverage machines, and restocking food and beverage supplies.  (Pl.'s Ex. P).  A review of Ms. Benitez's work after one year

---

[2] The facts are derived from the Defendant's Statement of Undisputed Facts in Support of its Motion for Summary Judgment (Docket No. 61) ("DF"); Exhibits attached to the Affidavit of Brian M. Haney, Esq. in Support of Defendant's Motion for Summary Judgment (Docket No. 62) ("Def.'s Ex. __"); and materials submitted by the plaintiff in support of her opposition to the defendant's motion for summary judgment (Docket No. 64) ("Pl.'s Ex. __").

2

indicated that she had excellent relations with customers, worked well with co-workers, performed very well on the cash register and met all requirements of the job. (Pl.'s Ex. N).

The record indicates that in May 1998, Ms. Benitez obtained a note from the Martha Eliot Health Center stating that the plaintiff was unable to perform lifting for a period of six weeks. (Pl.'s Ex. B at 1). There is no indication that Ms. Benitez had any further restrictions at that time or that she was incapable of performing the requirements of her job.

On June 7, 1999, Ms. Benitez obtained another note, this time from Natalia Sedo, a nurse practitioner at the Martha Eliot Health Center, stating in relevant part that "[Ms. Benitez] should not be doing any heavy lifting and should advance her activity as tollerated (sic)." (Id. at 3). No evidence has been submitted describing the reason for Ms. Benitez's inability to perform heavy lifting at that time, but it appears from the record that the plaintiff may have been experiencing pain as a result of a lipoma[3] and/or degenerative disc disease in her back. (See Pl.'s Ex. H at 5; Def.'s Ex. H). As described below, Sodexho terminated Ms. Benitez when she failed to report to work because she was undergoing surgery to have the lipoma removed.

After receiving the note from Ms. Benitez's medical provider, Sodexho made arrangements for Ms. Benitez to avoid heavy lifting. (Pl.'s Ex. C at 2). Specifically,

---

[3] A "lipoma" is defined as a "benign fatty tumor." The American Heritage College Dictionary 790 (3d ed. 1993).

3

Sodexho arranged "to switch [Ms. Benitez's] side work to only involve wiping counters." (Id.). It also determined that on those occasions when business warranted, Ms. Benitez would "need to do her old sidework with modifications[,]" which would involve preparing and lifting drink mix in half batches weighing 8 pounds rather than in full batches weighing 16 pounds. (Id.). Sodexho also agreed to give Ms. Benitez extra time to accomplish this task. (Id.). According to Sodexho, Ms. Benitez continued to work under this modified task assignment throughout the remainder of her employment with the defendant. (Pl.'s Ex. C at 4 n.1).

### Circumstances Surrounding Ms. Benitez's Termination

The record shows that Sodexho terminated Ms. Benitez after she failed to appear for work for three days in January 2000. Furthermore, when viewed in Ms. Benitez's favor, the evidence demonstrates that Ms. Benitez did not report to work because she was undergoing a scheduled surgery of which Sodexho was aware.[4]

On December 16, 1999, Sodexho personnel met with Ms. Benitez to discuss a warning that she had received regarding problems with her attendance and compliance with the company's uniform standards. (Pl.'s Ex. C at 1). During the meeting, Ms. Benitez requested permission to take her vacation during the week of January 23, 2000. (Id.). According to Ms. Benitez, she told her supervisors that she needed the time off in order to have back surgery, although she did not specifically identify the reason why she

---

[4] These facts are undisputed for purposes of the motion for summary judgment only.

4

needed the surgery. (DF ¶¶ 4-5; Def.'s Ex. B at 41, 99-100). She subsequently provided Sodexho with a letter from her physician stating that Ms. Benitez "is in need of surgery which has been scheduled for January 27, 2000 at the Mass[achusetts] General Hospital. Following this she will be out of work for an additional week in order to recuperate at home." (Pl.'s Ex. H at 4; Def.'s Ex. B at 41, 43).

Ms. Benitez's supervisors denied her request to take vacation during the week of January 23, despite her scheduled surgery, because other employees had already been granted time off that week. (Pl.'s Ex. C at 1; Def.'s Ex. B at 45). Although she knew her request had been denied, Ms. Benitez did not reschedule her surgery. (DF ¶ 7). According to Ms. Benitez, that would have required too much effort, and she was eager to be relieved of the pain she was experiencing as a result of her medical condition. (Def.'s Ex. B at 56).

Ms. Benitez underwent surgery on January 27, 2000 as scheduled. (Def.'s Ex. E at 1). The procedure involved the removal of a subcutaneous lipoma from Ms. Benitez's back. (Id.). At the same time, doctors removed a skin tag from the plaintiff's thigh and a 2.5 cm portion of the plaintiff's cesarean section scar. (Id.). The entire procedure was completed in under an hour. (Id. at 2).

According to the plaintiff's physician, Ms. Benitez was unable to perform her job duties during the time period from January 27, 2000 through February 14, 2000. (Def.'s Ex. F). However, Ms. Benitez experienced no complications and required no further treatment as a result of the surgery, and her doctor authorized her return to work on February 15, 2000. (DF ¶¶ 14-15).

Ms. Benitez agreed that she was prepared to return to work and perform her job on February 15, 2000. (Def.'s Ex. B at 72-74, 93-94). Instead, however, Sodexho sent Ms. Benitez a letter, dated January 31, 2000, informing her that she had been terminated. (Def.'s Ex. C). Specifically, Sodexho notified the plaintiff in relevant part as follows:

> For the past three consecutive days, January 26th, 27th and 28th, for reasons unknown to us, you have decided not to report to work or to call us stating your reasons for not reporting to work. We will make no assumptions and do consider this action to be a voluntary termination on your part.
>
> At this time, it will be necessary for you to return any and all Sodexho Marriott Services owned items including all uniforms and keys that were issued to you as well as your FleetBoston ID before your final paycheck can be released.

(Id.). In connection with her termination, Sodexho also cancelled Ms. Benitez's health care and disability insurance benefits effective January 25, 2000. (Pl.'s Ex. I at 5; Pl.'s Ex. Q). Ms. Benitez claims that Sodexho's refusal to accommodate her scheduled surgery and its decision to fire her constituted disability discrimination. (Def.'s Ex. A ¶¶ 5-12).

6

**Additional Evidence of Back Pain**

The evidence regarding Ms. Benitez's medical condition reveals that in early 2000, in addition to the lipoma, Ms. Benitez was experiencing lower back pain due to degenerative disc disease. (Def.'s Ex. H).[5] The results of an MRI conducted on January 22, 2000 indicated that Ms. Benitez had "[d]egenerative disc disease at L4-5 touching the exiting right L4 nerve root" but "[n]o acute disc herniation." (Def.'s Ex. G). It also indicated that the plaintiff had "[p]robable hemangioma[6] involving L4." (Id.). Additionally, on February 11, 2000, after Ms. Benitez's employment had been terminated, Dr. Marie Pasinski reported that Ms. Benitez was continuing "to have pain in her low back, more prominent on the right radiating down the right buttock but not down the leg. She denies any new numbness or weakness. She has been on Celebrex without significant improvement. She has not tried either physical therapy or muscle relaxants." (Def.'s Ex. H). Following an examination, Dr. Pasinski recommended a conservative course of treatment and physical therapy. (Id.). She also prescribed Celebrex and Flexeril, but with no refill. (Id.).

---

[5] Throughout her deposition, Ms. Benitez described having experienced back pain caused by "hernias." (See, e.g., Def.'s Ex. B at 88). However, nothing in the available medical evidence indicates that Ms. Benitez suffered from hernias, and it appears from the record that Ms. Benitez intended to mean "herniated disc."

[6] A "hemangioma" is defined as "[a] benign skin lesion consisting of dense, usu. elevated masses of dilated blood vessels." The American Heritage College Dictionary 632 (3d ed. 1993).

According to Ms. Benitez, the back pain she experienced restricted her ability to grocery shop by herself, drive long distances and put on certain types of shoes. (DF ¶ 22; Def.'s Ex. B at 82, 88-89, 91, 168-69). She also claims that since her termination from Sodexho, she has not been able to cook or clean. (Def.'s Ex. B at 142). However, Ms. Benitez agrees that both before her termination from Sodexho and afterward, she was able to walk, see, hear, speak, breathe, learn, eat, and bathe. (DF ¶¶ 17, 20; Def.'s Ex. B at 143). She also testified that since her surgery for the lipoma, she has been capable of working. (DF ¶ 21; Def.'s Ex. B at 138).

In October 2000, over eight months after she was terminated from Sodexho, Ms. Benitez suffered back pain as a result of an automobile accident. (DF ¶¶ 23, 24; Def.'s Ex. I). She received treatment for her injuries, was discharged from therapy with no disability, and her condition was ultimately resolved. (DF ¶¶ 24, 26; Def.'s Exs. J & K).[7]

Additional factual details relevant to the court's analysis are described below.

### III.  ANALYSIS

#### A.  Summary Judgment Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute is 'genuine' if the

---

[7] As noted below, Ms. Benitez was involved in a second car accident in December 2005.

evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996) (quotations and citations omitted). A material fact is one which has the "potential to affect the outcome of the suit under the applicable law." Id. (quotations and citations omitted).

      The moving party bears the initial burden of establishing that there is no genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. See id. at 324, 106 S. Ct. at 2553. The non-moving party "may not rest upon mere allegation or denials of his pleading," but must set forth specific facts showing that there is a genuine issue for trial. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)). The court must view the record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. See O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). "If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate." Walsh v. Town of Lakeville, 431 F. Supp. 2d 134, 143 (D. Mass. 2006).

B.	**Employment Discrimination Under the ADA**

The plaintiff claims that Sodexho discriminated against her on the basis of a disability by failing to accommodate her by allowing her to take time off for her scheduled back surgery and by terminating her employment and cancelling her health insurance coverage. (Am. Complaint, Def.'s Ex. A ¶¶ 5-12). While these actions may not be fair, they do not state a claim under the ADA – the only cause of action alleged in the complaint.[8]

"The ADA was designed to eliminate discrimination against individuals with disabilities." Gillen v. Fallon Ambulance Serv., 283 F.3d 11, 20 (1st Cir. 2002) (citing 42 U.S.C. § 12101(b)(1)). It prohibits covered employers such as Sodexho "from discriminating against a qualified individual because of that individual's disability." Id. Additionally, "[d]iscrimination under the ADA includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless ... the accommodation would impose an undue hardship on the operation of the business.'" Carroll v. Xerox Corp., 294 F.3d 231, 237 (1st Cir. 2002) (quoting 42 U.S.C. § 12112(b)(5)(A)). Sodexho has moved for summary judgment on the grounds that Ms.

---

[8] Ms. Benitez, in her filings in opposition to Sodexho's motion for summary judgment, argues that the defendant violated various statutes, deprived her of her constitutional rights, and committed certain torts against her. (See Docket Nos. 67 & 72). Because no such claims have been alleged in the complaint, this court declines to address them. (See Def.'s Ex. A (Amended Complaint)).

Benitez is not "disabled" under the ADA. This court agrees and therefore recommends that Sodexho's motion be granted.[9]

"The ADA defines a disability as (1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." Wright v. CompUSA, Inc., 352 F.3d 472, 475-76 (1st Cir. 2003) (citing 42 U.S.C. § 12102(2)). "Merely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity." Toyota Motor Mfg. Ky. v. Williams, 534 U.S. 184, 195, 122 S.Ct. 681, 690, 151 L.Ed.2d 615, 629 (2001). Additionally, "[t]o qualify as disabled, a claimant must further show that the limitation on the major life activity is 'substantial.'" Id. (quoting 42 U.S.C. § 12102(2)(A)). This requires evidence that the impact of the impairment is "permanent or long-term." Id. at 198, 122 S.Ct. at 691.

### C. Alleged Disability Based on Ms. Benitez's Lipoma

It is undisputed that Sodexho terminated Ms. Benitez's employment when she failed to report to work because she was undergoing surgery to have the lipoma removed.

---

[9] In order to prove a claim for disability discrimination or failure to accommodate under the ADA, the plaintiff must establish that she suffered from a disability. See Carroll, 294 F.3d at 237. Because there is no evidence in the record from which a reasonable jury could conclude that Ms. Benitez was disabled within the meaning of the ADA, the plaintiff cannot establish a prima facie case of discrimination or failure to accommodate.

The evidence further illustrates that the lipoma was a temporary condition and therefore cannot satisfy the requirement that an asserted impairment be permanent or long-term.

Temporary conditions are insufficient to establish a disability under the ADA. See, e.g., Benoit v. Technical Mfg. Corp., 331 F.3d 166, 176 (1st Cir. 2003) (plaintiff not disabled under the ADA where low back strain and strain of the knees were temporary conditions); Carroll, 294 F.3d at 240-41 (evidence that plaintiff's condition required three month disability leave from job insufficient to show that impairment was of sufficient duration and severity to substantially limit him from asserted activity of working); Bryant v. Caritas Norwood Hosp., 345 F. Supp. 2d 155, 165 (D. Mass. 2004) (plaintiff unable to establish disability under ADA where evidence was insufficient to demonstrate that potentially disabling condition was other than a "temporary, non-chronic impairment of short duration with little or no long-term [or] permanent impact.") (quotations and citation omitted).  In the instant case, the record shows that Ms. Benitez's lipoma was removed on January 27, 2000, and that following the removal, Ms. Benitez experienced no complications and required no further treatment.  (DF ¶ 14; Def.'s Ex. E).  The record further shows that Ms. Benitez's physician authorized her return to work on February 15, 2000, and that Ms. Benitez would have been prepared to resume her duties at Sodexho had her employment not been terminated.  (DF ¶ 15; Def.'s Ex. B at 138).  Thus, even assuming the lipoma limited Ms. Benitez's ability to perform one or more major life activities, it cannot

constitute a disability for purposes of the ADA because the evidence does not establish that any such limitations were substantial.

### D. Alleged Disability Based on Degenerative Disc Disease

To the extent Ms. Benitez is claiming that her degenerative disc disease and associated back pain rendered her disabled under the ADA, the evidence regarding the nature and extent of that impairment is not adequate to overcome summary judgment. In particular, Ms. Benitez has not presented facts showing that the pain caused by her degenerative disc disease substantially limited her ability to perform one or more major life activities.

Pursuant to the ADA, the phrase "major life activities" "refers to those activities that are of central importance to daily life." Toyota Motor, 534 U.S. at 197, 122 S.Ct. at 691. They include, but are not limited to, walking, seeing, hearing and performing manual tasks. See id. at 195, 122 S.Ct. at 690. The record shows that during the time when Ms. Benitez was employed at Sodexho, her back pain restricted her ability to lift heavy objects, grocery shop by herself, drive long distances and put on certain types of shoes. (DF ¶ 22; Pl.'s Ex. B at 1; Def.'s Ex. B at 168-69). However, these tasks do not constitute "major life activities" within the meaning of the ADA. See, e.g., Toyota Motor, 534 U.S. at 202, 122 S.Ct. at 694 (limitations on ability to dress alone and drive long distances not severe restrictions on activities of central importance to most people's

daily lives); Bryant, 345 F. Supp. 2d at 165 (ability to perform heavy lifting not major life activity).

The record further demonstrates that while she was working for Sodexho, Ms. Benitez was able to perform a variety of tasks that are of central importance to the lives of most people. In particular, she was able to walk, see, hear, speak, breathe, learn, eat and bathe. (DF ¶¶ 17, 20; Def's Ex. B at 143). Additionally, to the extent working qualifies as a major life activity, Ms. Benitez was able to perform her job responsibilities, as modified to accommodate her inability to perform heavy lifting, and would have been capable of returning to work after her surgery had Sodexho not fired her. (DF ¶ 21; Def.'s Ex. B at 138). Accordingly, Ms. Benitez has not presented evidence showing that during the relevant time period, her degenerative disc disease limited one or more of her major life activities.

Even assuming Ms. Benitez's back condition had restricted her ability to perform a major life activity, she has not presented evidence showing that any such limitation was substantial. There is no evidence indicating that Ms. Benitez's impairment was long-term or permanent. To the contrary, the record indicates that the plaintiff's condition was expected to and did in fact improve. For example, Ms. Sedo, in her note regarding Ms. Benitez's inability to perform heavy lifting, directed that the plaintiff should avoid heavy lifting but "should advance her activity as tollerated (sic)," thereby suggesting that Ms. Benitez's condition was likely to improve. (See Pl.'s Ex. B at 3). The evidence further shows that in early 2000, following the diagnosis of degenerative disc disease, Dr.

14

Pasinski recommended only a conservative course of treatment, including physical therapy, and non-renewable dosages of medications. (Def.'s Ex. H). Moreover, the record indicates that by December 2005, Ms. Benitez was no longer experiencing problems relating to her degenerative disc disease. Notably, in 2005, following a second automobile accident, Ms. Benitez informed her chiropractor that after her accident in 2000, she received treatment and "her condition was resolved." (Def.'s Ex. K at 1). She further informed him that "she has asthma and high blood pressure, but otherwise her general health has been good" and she reported "[n]o other significant medical history[.]" (Id.). Accordingly, the chiropractor concluded that the back pain Ms. Benitez was experiencing resulted from the accident that occurred on March 12, 2005, and apparently not a pre-existing condition. (Id. at 4). Therefore, Ms. Benitez cannot establish that her degenerative disc disease "was of sufficient duration and severity to constitute a 'disability' under the ADA." Bryant, 345 F. Supp. 2d at 166. Consequently, "she has not raised a genuine issue of material fact concerning the question of whether she is 'disabled' within the meaning of, and therefore entitled to the protections of, the ADA." Id.

### E.   Whether Sodexho Regarded the Plaintiff as Disabled

Ms. Benitez appears to contend that Sodexho "regarded" her as disabled based on its willingness to accommodate the restrictions on her ability to lift heavy objects. However, this claim too must fail.

"A plaintiff claiming that he is 'regarded' as disabled cannot merely show that his

15

employer perceived him as *somehow* disabled; rather, he must prove that the employer regarded him as disabled *within the meaning of the ADA*." Benoit, 331 F.3d at 176 (quoting Bailey v. Georgia-Pacific Corp., 306 F.3d 1162, 1169 (1st Cir. 2002)) (emphasis in original). At best, the record in the instant case shows only that Sodexho became aware that Ms. Benitez suffered from an undefined back condition and was restricted in her ability to lift heavy objects. As described above, Ms. Benitez cannot establish that a limitation on heavy lifting constitutes a substantial limitation on a major life activity. Moreover, Ms. Benitez has not presented any evidence which would support an inference that anyone at Sodexho considered Ms. Benitez to be impaired in her ability to perform any activity of central importance to daily life or to be suffering from a long-term or permanent condition. Therefore, Ms. Benitez has not presented adequate facts to create a genuine dispute as to whether Sodexho regarded her as disabled under the ADA.

## IV. CONCLUSION

For all of the reasons detailed above, this court concludes that the record is insufficient to create a genuine issue of fact as to whether, during the relevant time period, Ms. Benitez was suffering from a disability within the meaning of the ADA. Therefore, this court recommends to the District Judge to whom this case is assigned that the "Defendant's Motion for Summary Judgment" (Docket No. 59) be ALLOWED.[10]

---

[10] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings,

|  |  |
|---|---|
| _____ | /s/ Judith Gail Dein<br><br>Judith Gail Dein<br>United States Magistrate Judge |

---

recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).